IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| REBECCA SARAH SANSONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-22-369-AMG |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Rebecca Sarah Sansone ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34.  (Doc. 1).   The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 9, 10), and the parties have fully briefed the issues (Docs. 23, 29, 30).[1]  The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (Docs. 13, 24).  Based on the court's review of the record and the issues presented, the court **REVERSES** Defendant Commissioner's decision, and the case is **REMANDED** for further consideration consistent with this order.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination.  Citations to the Administrative Record refer to its original pagination.

I.      **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see* 20 C.F.R. §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.   20 C.F.R.  §  404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience."  *Id.*  "The claimant is entitled to disability benefits only if [Claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."   *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*,

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Procedural History

Plaintiff filed an application for DIB on February 19, 2019, alleging a disability onset date of January 1, 2019. (AR, at 64-65). The SSA denied the application initially and on reconsideration. (*Id*. at 86-90, 92-95). Then an administrative hearing was held on September 16, 2021. (*Id*. at 32-63). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 15-31). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 7-12). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

III.     **The Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2019, the alleged onset date.  (AR, at 21).  At Step Two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine (mild), and cervical dystonia."  (*Id*.)  At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 22).  The ALJ then determined that Plaintiff had the RFC to "perform the full range of light work as defined in 20 CFR 404.1567(b)."  (*Id*. at 23).  Then, at Step Four, the ALJ concluded that Plaintiff "is capable of performing past relevant work as a sales clerk (food) and instructor (physical)," and that "[t]his work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity."  (*Id*. at 26).  Thus, the ALJ found that Plaintiff had not been under a disability from the onset date of January 1, 2019, through the date of the ALJ's decision.  (*Id*.)

IV.     **Claims Presented for Judicial Review**

Plaintiff raises three issues on appeal.   First, Plaintiff claims that the ALJ's determination of Plaintiff's RFC at Step Four was erroneous because the ALJ did not properly consider the entire record and all of Plaintiff's impairments.  (Doc. 23, at 3).  Specifically, Plaintiff alleges that the ALJ incorrectly determined Plaintiff's depression and anxiety to be non-severe and ignored Plaintiff's pain disorder.  (*Id*. at 3-4).  Second, Plaintiff claims that the ALJ erred in his analysis at Step Three by failing to find that Plaintiff meets or equals Listing 12.07 for somatic symptom and related disorders.  (*Id*. at

4-7). Finally, Plaintiff argues that the ALJ failed to properly assess the vocational expert's testimony at Step Five, in part by disregarding the vocational expert's determination that Plaintiff's inability to rapidly turn her head to the right rendered all past relevant work unavailable. (*Id*. at 3, 7-9).

In response, the Commissioner argues that the ALJ reasonably found that Plaintiff's non-severe mental impairments did not cause work-related limitations, that evidence does not support Plaintiff's contention that she had a somatoform disorder, and that the ALJ included all credible limitations in the RFC. (Doc. 29, at 4-12).

## V.   Analysis: The ALJ Failed To Adequately Consider Plaintiff's Medically Determinable Mental Impairments in Formulating the RFC.

At Step Two, the ALJ found that Plaintiff has the severe medically determinable impairments of degenerative disc disease of the cervical spine (mild) and cervical dystonia; a non-severe impairment related to her left wrist ganglion cyst removal and subsequent stiffness; and the non-severe medically determinable mental impairment of adjustment disorder with depression. (AR, at 21). In considering the evidence of mental impairment, the ALJ stated:

> [Plaintiff's] medically determinable mental impairment of adjustment disorder with depression does not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and was therefore nonsevere. Reynolds Army Health Clinic records dated February 2021, reflect [Plaintiff's] report of worsening depression for 6-12 months. On mental status examination her mood is noted as euthymic, and affect, normal. Primary care provider Patricia I. Davis, MD noted a provisional diagnosis of adjustment disorder with depressed mood, prescribed Cymbalta, and ordered a referral for counseling (12F/2-8).
>
> [Plaintiff] testified to a limited ability to work due to anxiety and depression. She indicated having feelings of sadness related to physical pain, episodes of

> crying at work in which she would go into her car or bathroom, difficulty
> focusing due to pain, and difficulty interacting with others.  At the time of
> the hearing she testified to taking no psychotropic medication; she
> discontinued Cymbalta because it reportedly provided no benefit.  However,
> she started visiting with a counselor in April or May 2021 every 2-3 weeks
> which helps a little.

(*Id.*)  The ALJ then considered the four broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders, the "paragraph B criteria." (*Id.* at 21-22).  Citing some record evidence, the ALJ determined that Plaintiff has a mild limitation in adapting or managing oneself.  (*Id.* at 22).  Without any explanation or citation to the record, and stating only that "the record evidences no problem," the ALJ found Plaintiff had no limitation in understanding, remembering or applying information, interacting with others, and concentrating, persisting or maintaining pace.  (*Id.* at 21-22).  Accordingly, he found that "[b]ecause [P]laintiff's medically determinable mental impairment has caused no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it was nonsevere."  (*Id.* at 22).

Plaintiff argues that the ALJ erred in failing to consider the medically determinable impairment of pain disorder due to psychological factors and cervical dystonia, which was diagnosed in the September 26, 2018, report of psychologist Angelique Strand, Ph.D. (Doc. 23, at 4-7 (citing AR, at 640-44)).  The Court agrees.  Plaintiff was referred to Dr. Strand "for assessment of psychological functioning by her neurologist, Leonard J. Cerullo, MD, who is seeing her for neck spasms."  (AR, at 641).  Dr. Strand diagnosed Plaintiff with both "major depressive disorder, recurrent, moderate," and "pain disorder due to

psychological factors and cervical dystonia." (*Id.* at 643). The plan of care states that Plaintiff's "psychosomatic conditions" should be "treated from a symptom reduction approach" with an "interdisciplinary comprehensive pain management program" but notes that Plaintiff "does not feel that she could participate in such a program at this time due to the time commitment and the need to take off work." (*Id.*)[3]

The Commissioner appears to argue that Dr. Strand's report is not relevant because it was issued "before the relevant time period" (Doc. 29, at 7) beginning January 1, 2019. But the ALJ should consider medical evidence and opinions that predate the disability date. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's

---

[3] The Commissioner argues that "Dr. Strand did not diagnose Plaintiff with somatoform disorder." (Doc. 29, at 7). But Dr. Strand did diagnose Plaintiff with "pain disorder due to psychological factors and cervical dystonia" and recommended a plan of care for Plaintiff's "psychosomatic conditions." (AR, at 643). Dr. Strand stated that Plaintiff "scores high on somatic complaints" and that "[t]he presence of a somatic disorder cannot be ruled out." (*Id.*)

"Somatic symptom disorder is diagnosed when a person has a significant focus on physical symptoms, such as pain, weakness or shortness of breath, to a level that results in major distress and/or problems functioning. The individual has excessive thoughts, feelings and behaviors relating to the physical symptoms. The physical symptoms may or may not be associated with a diagnosed medical condition, but the person is experiencing symptoms and believes they are sick (that is, not faking the illness)." Website, American Psychiatric Association, *What is Somatic Symptom Disorder*, https://www.psychiatry.org/patients-families/somatic-symptom-disorder/what-is-somatic-symptom-disorder (last viewed April 5, 2023). *See also* Website, WebMD, *Somatic Symptom and Related Disorders*, https://www.webmd.com/mental-health/somatoform-disorders-symptoms-types-treatment (last viewed April 5, 2023) (noting that somatic symptom disorder was "formerly known as 'somatization disorder' or 'somatoform disorder'").

medical history and should be considered by the ALJ."); *Reeves v. Kijakazi*, 2021 WL
5354104, at *3 (W.D. Okla. Nov. 16, 2021) ("Although this record is from nearly two years
prior to the alleged onset date, it is still relevant, and the ALJ should have addressed it.")
(citing *Hamlin*); *Howry v. Saul*, 2019 WL 4739687, at *3 (W.D. Okla. Sept. 27, 2019)
(citing *Hamlin*).

Although the ALJ issued a blanket finding of non-severity for "any other
impairments alleged by the claimant or mentioned in the medical records," (AR, at 21), it
does not appear that he considered the report of Dr. Strand or the diagnosis of "pain
disorder due to psychological factors and cervical dystonia" in his assessment of Plaintiff's
non-severe mental impairments.

More problematically, the ALJ fails to account for the mental or functional
limitations discussed in the one piece of evidence he did cite, the February 2021 health
record of primary care provider Patricia I. Davis, MD. (*See* AR, at 21 (citing Exhibit 12F/2-
8, same as AR, at 585-591)). In Dr. Davis's psychological findings from February and
March 2021, she states that Plaintiff has "decreased functioning ability." (AR, at 587, 593).
As Plaintiff notes, the "elevated questionnaires" in these records include "[f]urther
evidence of mental impairments, depression and anxiety," and other functional limitations
relevant to the paragraph B criteria. (Doc. 23, at 4 (citing in part AR, at 587-88, 591, 594)).
For example, the questionnaires note that Plaintiff reported "nearly every day" and "[m]ore
than half the days" of "[f]eeling tired or having little energy" (AR, at 587, 594); "nearly
every day" and "several days" of "[t]rouble concentrating on things, such as reading the
newspaper or watching television (*id*. at 587, 594); "several days" of "[b]eing so restless

that it is hard to sit still" (*id*. at 588, 594); and that these problems have made it "difficult," "very difficult," or "extremely difficult to work" (*id*. at 587-88, 594).   The ALJ's conclusory recitation of the paragraph B criteria, without any discussion of the functional limitations in Dr. Strand's report, was error.   An ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability," without explaining her reasoning.  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).   While "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R. §§ 404.1520(a)(3) ("We will consider all evidence in your case record . . . ."). The ALJ in this case engaged in prohibited picking and choosing.

Because the ALJ found that Plaintiff had other severe impairments, any error in finding that Plaintiff's mental impairments were non-severe was harmless.  *See Cabe v. Saul*, 2021 WL 1225885, at *2 (W.D. Okla. Mar. 31, 2021) ("If an ALJ deems at least one impairment severe and proceeds to the remaining steps of the evaluation, any error at step two in failing to deem a certain impairment severe is considered harmless.") (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence")).  However, the ALJ's failure to properly consider these non-severe impairments and functional limitations in formulating the RFC at Step Four is reversible error, and remand is required.

In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe.  20 C.F.R. § 404.1545(a)(2); Social Security Ruling 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  The SSA has specifically stated that the criteria used at Steps Two and Three of the analysis to rate the severity of mental impairments are "not an RFC assessment," and that

> [t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

Social Security Ruling 96-8p, 1996 WL 374184, at *4.  While the ALJ's opinion explicitly acknowledged this legal standard, his only further statement about Plaintiff's mental impairments was at the end of his Step Two analysis, that "the following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."  (AR, at 22).

The RFC contained no mental limitations, and the ALJ's justification for the RFC made only one reference to Plaintiff's mental state or mental functioning, that Plaintiff "alleged anxiousness and worry about everyday life and being around others due to her physical condition, and depression."  (*Id*. at 23 (citing Exhibits 2E, 8E, 10E)).  The exhibits cited include a December 4, 2019, disability report appeal prepared by Plaintiff (Exhibit 10E, same as AR, at 279-285) wherein she reports the new medical condition of "depression" (AR, at 280).  The ALJ does not discuss any of the evidence he cited at Step Two, nor does he tie any evidence to his decision not to include mental limitations in the

RFC.  And the diagnosis of pain disorder due to psychological factors and cervical dystonia is disregarded altogether.

In *Wells v. Colvin*, 727 F.3d (10th Cir. 2013), the Tenth Circuit Court of Appeals condemned this type of Step Four analysis, stating:

> [A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five. In his RFC assessment, the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not. Here, after stating his conclusion that [the plaintiff's] mental impairments were non-severe, the ALJ stated that "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below." He then reiterated his conclusion that the mental impairments were non-severe. The language used suggests that the ALJ may have relied on his step-two findings to conclude that [the plaintiff] had no limitation based on her mental impairments. If so, this was inadequate under the regulations and the Commissioner's procedures.

727 F.3d at 1068-69 (internal citations omitted).  Simply stated, "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis."  *Id*. at 1065.  Rather, "the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  *Id*.

The ALJ in this matter did precisely what the Tenth Circuit condemned in *Wells* – he relied on his Step Two finding that Plaintiff's mental impairment of adjustment disorder with depression was non-severe as a substitute for a more specific RFC analysis.  Reversal of the Commissioner's decision and remand for further administrative proceedings is warranted for a reconsideration of the effect of Plaintiff's mental impairments in formulating the RFC and the subsequent analytical steps.

Because this error alone requires remand, the Court need not address the other arguments raised by Plaintiff. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision. On remand, the ALJ shall properly assess the evidence of Plaintiff's mental impairments in accordance with this Court's findings set forth above.

**SO ORDERED** this 7th day of April, 2023.


AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE